EDWIN C. HOXIE ET AL., APPELLEES, v. CHICAGO & NORTH-
WESTERN RAILWAY COMPANY, APPELLANT.

FILED MAY 4, 1918. No. 19895.

**Trial:** PEREMPTORY INSTRUCTION. Where the evidence is insufficient
to sustain a verdict in favor of plaintiff, it is error to overrule a
motion for a peremptory instruction in favor of defendant.

APPEAL from the district court for Lancaster county:
WILLARD E. STEWART, JUDGE. *Reversed.*

*Frank M. Hall, A. A. McLaughlin, Lyle Hubbard* and
*Wymer Dressler,* for appellant.

*Berge & McCarty, contra.*

ROSE, J.

Katie A. Hoxie was struck and killed by a passenger
train on defendant's railroad track, and this is an action
by the administrators of her estate to recover resulting
damages in the sum of $20,000; her husband and a
daughter being survivors. From the judgment on a
verdict in favor of plaintiffs for $9,000, defendant has
appealed.

The accident occurred November 13, 1914, about 6
o'clock in the evening, after dark, at a private crossing
in the outskirts of Sioux City, Iowa, three and one-half
miles south of the station, where the railroad right of
way is fenced with barbed wire; there being an iron
gate on each side. For more than two miles south of
the private crossing and for more than a mile north of
it there is a single, straight, railroad track running
nearly north and south on a roadbed several feet above
the natural surface of the ground. West of the railroad,
between the right of way and the Missouri river, there
is a narrow strip of land occupied by a farmer. The
private crossing was maintained for his benefit and he
generally kept the gates locked. They were in fact

closed at the time of the accident. His outlet was a fenced lane, 23 feet or more in width, extending east a few rods from the east gate at the private crossing to a public highway running northward toward Sioux City. Alex Armstrong, another farmer, lived about 200 feet east of the railroad right of way and 40 feet or more north of the lane described. Katie A. Hoxie had been a guest of the Armstrongs. She had been missed during the evening, and the Armstrongs and some of their neighbors began to search for her. The 6 o'clock north-bound, passenger train passed without slackening its speed and ran to Sioux City, where clothing and blood were found on the locomotive. The crew of a later passenger train, running in the same direction on the same track, were notified by wire to look for a human body. Not long after 7 o'clock the same evening this crew and the local searchers found parts of the body on the railroad track about 350 feet north of the private crossing, near the north end of a railroad bridge. Other parts were found between the bridge and the private crossing.

Defendant is charged with negligence in failing to give proper signals, in running its train at a high rate of speed, in failing to keep a proper lookout, and in failing to make proper efforts to stop the train after decedent was, or should have been, discovered in a place of danger. The answer of defendant, among other defenses pleaded, contains a denial of negligence on its part.

The first assignment of error challenges the overruling of a motion by defendant for a peremptory instruction on the ground that the evidence is insufficient to sustain a verdict in favor of plaintiffs. This is the vital question in the case. The reading and the analyzing of the evidence were difficult tasks, requiring considerable time. The details of the accident cannot be contemplated without emotion. The loss sustained by the husband and by the daughter makes a strong

appeal to human sympathy. In addition, there was able advocacy on behalf of plaintiffs. The verdict in their favor, therefore, should have occasioned no surprise, after the trial court, by submitting the case to the jury, held the evidence sufficient to sustain a finding against defendant. In the final analysis, however, the sufficiency of the evidence must be determined without the influence of either emotion or sympathy.

Was plaintiff guilty of negligence in failing to give highway signals? No one rang the bell or blew the whistle. The accident occurred at a private crossing where there was a closed gate in the right of way fence on each side of the railroad track. Neither the rules of defendant nor the laws of Iowa required signals at that place. Custom did not require them. The thunder of the train and a powerful headlight gave warning for more than a mile. A short distance east of the private crossing, a man in a wagon, while driving northward on the public highway, heard the train and saw the headlight. The approach from the south was thus observable for a long distance. It is insisted, however, that pedestrians had constantly passed through an opening in the fence, and had thus worn a path between the lane and defendant's roadbed. It is argued that this use of the railroad property required signals. Some of the pedestrians had walked along the track past the private crossing. Others crawled under one or two wires through a short panel south of the gate in the east fence. The lower wires of the fence only had been trampled down or broken. The broken or misplaced wires were constantly restored by the section foreman. Defendant never consented to the misplacing of the lower wires or to the use which pedestrians made of its property. Highway signals were not required at the private crossing, and the record contains no evidence that defendant was negligent in failing to give them.

Is proof of a high rate of speed evidence of negligence? The passenger train, on a straight track sev-

eral feet above the natural surface of the ground, throwing electric light 1,200 feet ahead of the locomotive, passing through a farming community between fences, ran at the rate of 40 or 45 miles an hour. This was the usual rate of speed at the private crossing in question. That speed alone, under such circumstances, is not evidence of negligence.

Will the evidence sustain a verdict in favor of plaintiffs under the doctrine of the last clear chance? At the private crossing planks had been laid lengthwise beside the rails; the space between the east rail and the plank on the west side of it being about two and one-half inches. The indications are that the impact occurred near the south end of this plank; the train coming from the south. Plaintiffs assert that the engineer and the decedent were both on the east side of the track; that one foot of decedent was fastened between the plank and the rail; that the engineer saw, or should have seen, her in time to stop the train before striking her. Where she went onto the track, or why, is a mystery. How far away the train then was is not shown. No one testified to having seen her on the track before the accident. The engineer testified that he was constantly at his post keeping a lookout; that an electric lamp on the locomotive lighted the track 1,200 feet ahead; that in looking for danger in time to avoid accidents he watched the track from 600 feet ahead of the engine to the extreme limit of the lighted area; that this was his custom; that, thus keeping a lookout, he saw the crossing; that it was clear; that he saw no one; that he did not suspect he had run over any one until after he examined his engine according to custom at Sioux City. He said, however, that he was conscious of a grinding sensation at or near the private crossing, but that he attributed it to the presence of sand on the rails; engineers on freight trains having used sand there. This evidence is uncontradicted. It is not unreasonable beyond belief,

and it is not refuted by circumstances. Plaintiffs point to testimony tending to show that a scuffed shoe, stripped of buttons, was found north of the private crossing, and that fresh splinters had been knocked off the east edge of the south end of the plank west of the east rail, near blood stains. The evidence falls far short of sustaining a finding that decedent was fastened to the track by a shoe when struck by the train, and that the engineer was negligent in failing to discover her there in time to avoid the accident. There is uncontradicted testimony that blood was found two feet south of the splintered end of the plank, that the flanges of car wheels splinter crossing-planks, and that other trains had passed over the private crossing after the accident and before the splintering had been discovered. Evidence that the proximate cause of Katie A. Hoxie's death was the negligence of defendant has not been found in the record.

It follows that the overruling of the motion for a peremptory instruction was erroneous. The judgment of the district court is therefore reversed and the cause remanded for further proceedings.

REVERSED.

SEDGWICK, J., not sitting.